UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

UNITED STATES OF AMERICA

-against-                                                    10 CR 391-09 (CM)

ANTHONY BRICE,

        Defendant.

------------------------------------------------------------x

DECISION AND ORDER ON DEFENDANT'S MOTION FILED PURSUANT TO
28 U.S.C § 2255 REGARDING HIS GUILTY PLEA AND SENTENCE
FOR VIOLATING THE TERMS OF HIS SUPERVISED RELEASE

McMahon, C.J.:

Anthony Brice came before the Court on December 2, 2019 and pleaded guilty to Specification One of the Violation of Supervised Release Petition, dated October 17, 2019, charging Brice with committing the New York State crime of Robbery in the Third Degree.

At the sentencing proceeding that followed, the Government provided the Court with documentary and photographic evidence of the crime, and played a video depicting: Brice sending someone to entice the victim to open his door; Brice pushing his way in and rearing back to throw a punch; Brice coming out several minutes later with obviously bloody knuckles and the victim's phone. After hearing from defendant's attorney and Brice himself, the Court sentenced Brice on

Specification One, to 37 months' imprisonment. The remaining specifications were dismissed on the motion of the Government.[1]

Before the Court is Brice's motions filed pursuant to 28 U.S.C. § 2255. In his original motion, Brice asked that he be resentencing on his supervised release violation, because the Court incorrectly calculated his guideline under the United States Sentencing Guidelines. ECF Document #1892. Brice subsequently amended his motion, and now asks the Court to vacate his guilty plea and allow him to proceed to a hearing. ECF Document #1920.

There is no question that Brice is entitled to resentencing. The Court (advised by the parties and the Probation Office) was under the misimpression that Brice faced a maximum sentence of five years' imprisonment, as opposed to the three years' imprisonment he actually faced, and an advisory Guidelines policy statement range of 37 to 46 months' imprisonment, as opposed to the 24 to 30 months' imprisonment that the Guidelines policy statement actually advised. Thus, the 37 months' sentence imposed by the Court was illegal, and resentencing is mandated.

As for Brice's motion to withdraw his plea, Brice claims that, had he only known he was facing a *lower* sentence, he would have taken his chances at a hearing. ECF Document #1920 at 3-4.

"A defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11 must show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). And because Brice

---

[1] For a fulsome rendition of the facts surrounding the violation and procedural posture of this motion, the reader is directed to the Government's Memorandum at ECF Document #1923.

brought the current claim in the context of a Section 2255 motion, he must show more than mere plain error, because "to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 167 (1982).

Brice's own words belie his current claim. At the conclusion of the sentencing proceeding, Brice insisted that he be allowed to address the court. Brice angrily explained why he wished that he had not admitted his guilt:

> THE DEFENDANT: Could I finish talking to you, please. I feel like this is all wrong because I didn't—I shouldn't feel like that.
>
> THE COURT: I'm sure you do.
>
> THE DEFENDANT: I feel like I wasn't properly informed of what was going to happen. If I wanted a hearing, then that's when the video was supposed to be shown to you. I denied the hearing. I didn't understand what was going on. So I don't understand—
>
> THE COURT: You can retroactively try to say that you didn't know what was going on. Tell it to the Court of Appeals, Mr. Brice. Tell it to the Court of Appeals.
>
> THE DEFENDANT: Ma'am, I'm not saying that. I'm saying that I—
>
> THE COURT: Maybe you didn't think you were going to get 37 months.
>
> THE DEFENDANT: No. That was an option. There's always an option. What I'm saying is for you to see the video—that wasn't supposed to happen.
>
> THE COURT: On the contrary. The government—
>
> THE DEFENDANT: To my knowledge, that wasn't supposed to happen because if that was going to happen, then I could have went to the hearing. You understand?

> THE COURT: As I said, Mr. Brice, tell it to the Court of Appeals.
>
> THE DEFENDANT: Basically I just had a hearing just now in front of you. That doesn't make any sense to me.
>
> THE COURT: I think we're done.
>
> THE DEFENDANT: All right. All right.

(Sent. Tr. 25–26). Brice made quite clear his reason for pleading guilty, and it had nothing to do with the statutory maximum or the Guidelines. He admitted his guilt because he thought that, if he did so, the Court would not see the Government video evidence—evidence that indisputably convicts him—and would have simply accepted the victim's supposed wishes that Brice walk free.[2] The Government, of course, upset Brice's plan when it played the damning video at sentencing, as was its right.

Essentially, what Brice was saying to the Court is that, had he known that the Court would find out about how serious his breach of the Court's trust was anyway, he would have thrown caution to the wind and gone to hearing—a hearing at which the Court would have seen the video that resulted in his receiving a substantial sentence for this violation. That does not entitle him to withdraw his plea.

---

[2] Brice secured a letter from the victim purportedly asking the Court to show Brice mercy. *See* ECF Document # 1883, Ex. B ¶¶ 4–5 ("… I hope Mr. Brice does not have to spend any more time in prison for his actions. … I know Mr. Brice is sorry for what he did. I do not want to see him further punished on my account. I hope he can return to the community."). This Court discounted the victim's statement as the product of intimidation: "I don't buy any of that. He can want it until the end of time, but I don't think he really means that. I think he's intimidated. Trust me. I know what's going on here. … I'm paying no mind. I've read it. I've considered it. I've concluded that it's worth nothing, and I'm putting it to one side." (ECF Document # 1900, Sent. Tr. 14).

This is not a case where a defendant was exposed to penalties greater than he was told. Indeed, at his resentencing, the Court is empowered to sentence Brice to as much as 36 months' imprisonment. When this Court told Brice that it could incarcerate him for as long as five years, that necessarily included the actual potential range. The misimpression under which we all labored at Brice's sentencing did not harm Brice.

Moreover, nothing in the record indicates that Brice believed, incorrectly, he would not receive a sentence of at least three years' imprisonment by pleading. He knew he could get less; he specifically asked this Court to "sentence [him] to time-served (6 months of incarceration)." (Docket Entry 1883 at 1). Conversely, the record shows that Brice did not believe that, by admitting his guilt, he was somehow *preventing* this Court from sentencing him to more than three years; he said otherwise on the record, both at his plea (Plea Tr. 5 (Brice confirming that he understood that "the worst that ... can happen to you is five years and you'll spend the rest of your life on supervised release")), and at his sentencing (Sent. Tr. 26 (after the Court posited "[m]aybe you didn't think you were going to get 37 months," Brice responded "No. That was an option. There's always an option.")). In other words, the record belies the idea that he admitted his guilt in order to reduce his exposure to less than three years' imprisonment.

Accordingly, Brice's motion to withdraw his plea to Specification One is denied. He will, however, be resentenced on that specification on April 8, 2021 at 12:00 p.m. The parties are advised that the Court is considering a sentence that is above the advisory Guidelines range.

This constitutes the decision and order of the Court.

Dated: March 19, 2021

_____
Colleen McMahon
Chief District Judge

By ECF: To All Parties